**Michael DAVILA, Plaintiff,**

v.

**OHIO EDISON COMPANY, et al., Defendants.**

**No. 4:99CV1198.**

United States District Court, N.D. Ohio.

June 27, 2000.

Alan S. Belkin, Law Offices of Alan S. Belkin, Cleveland, OH, for plaintiff.

Gary W. Spring, Aretta K. Bernard, Roetzel & Andress, Gary D. Benz, FirstEnergy Corp., Akron, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion of the Defendants, Ohio Edison Company ("Ohio Edison") and Pennsylvania Power ("Penn Power") for summary judgment (Dkt.# 17) and their Motion for Order Granting Summary Judgment (Dkt.# 22). On May 19, 1999, the Plaintiff filed a two count complaint alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and Ohio Revised Code Sections 4112.02 and 4112.99. The Plaintiff is of Puerto Rican descent.

For the following reasons, the Defendants' Motion for Summary Judgment (Dkt.# 17) is **GRANTED.**

### FACTS

The Plaintiff has failed to respond to the Defendants' summary judgment motion which was filed on May 19, 2000. As such, the Court will accept the facts as stated in the Plaintiff's Complaint (Dkt.# 1) as well as those established in the Plaintiff's deposition testimony which has been provided to the Court (Dkt.# 19).

The Plaintiff commenced his employment with Ohio Edison in 1979, as a store room clerk and stock-person. (Pl.Compl. ¶ 4; Pl.Dep. at 11, 15–16.) At the time of his hiring in 1979, the Plaintiff became a member of Local 118. (Pl.Dep. at 16.) Over the years, the Plaintiff held a number of jobs at Ohio Edison, and in July of 1994, he held the position of "Lineman A" for Ohio Edison. (Pl.Compl. ¶ 4; Pl.Dep. at 25–27.) The Plaintiff admitted in his depo-

sition that throughout his tenure at Ohio Edison he never had any difficulties in his employment and never experienced any adverse employment action because of his national origin. (Pl.Dep. at 27–28.)

On or about July 22, 1994, the Plaintiff, along with other employees including other linemen, were laid off by Ohio Edison. (Pl.Compl. ¶ 4; Pl.Dep. at 27–29.) The Plaintiff asserts that at the time he was laid off by Ohio Edison the company transferred a number of its linemen to its wholly owned subsidiary Penn Power. (Pl.Compl. ¶ 4; Pl.Dep. at 28–31.) The Plaintiff further alleges that nearly all of the "transferees" to Penn Power were "less senior and less qualified than plaintiff, were accepted as employees by defendant Pennsylvania Power and worked while plaintiff was on layoff." (Pl.Compl.¶ 4.) Furthermore, those who were allegedly transferred to Penn Power were American. (Pl.Compl.¶ 4.) The Plaintiff was not recalled to work by Ohio Edison until February of 1995, while those who were allegedly transferred worked for Penn Power. (Pl.Compl. ¶ 4; Pl.Dep. at 37.) The Plaintiff contends that this was a result of his national origin.

In his deposition, the Plaintiff admitted that as of September 26, 1994, he had not submitted an application for employment at Penn Power. (Pl.Dep. at 39 and 91.) This is despite the fact that the Plaintiff apparently knew that other linemen had sent applications to Penn Power near the time of their layoff, were interviewed, and were hired. (Pl.Dep. at 37–38.) The Plaintiff eventually did apply to Penn Power by letter which was marked received October 4, 1994. (Pl.Dep.Ex. B; Pl.Dep. at 58, 63.) On October 14, 1994, the Plaintiff received correspondence from Penn Power that there were no job vacancies. (Pl.Dep.Ex. C; Pl.Dep. at 64.) The Plaintiff never met with anyone from Penn Power, nor did he interview with Penn Power either in person or on the telephone. (Pl.Dep. at 64, 101.)

According to the affidavit of Greg Greathouse, Senior Human Resources Representative, Eastern Region, for First Energy Corporation, none of the linemen who were hired by Penn Power were transferred from Ohio Edison. (Aff. of Greathouse ¶¶ 2, 6.) Rather, the designation "trans to PP," upon which the Plaintiff apparently relied in claiming that other less-qualified and less-senior individuals were transferred over him, refers only to the transfer of employee benefits from Ohio Edison to Penn Power. (Aff. of Greathouse ¶ 5.) The laid off Ohio Edison linemen who were hired by Penn Power each submitted an employment application, were subject to the Penn Power hiring process, and were not given any special consideration because of their former employment with Ohio Edison. (Aff. of Greathouse ¶¶ 6, 7.) Furthermore, Penn Power did not request any information from Ohio Edison about the applicants and no information was provided by Ohio Edison, including information about national origin. (Aff. of Greathouse ¶¶ 9, 10.)

## SUMMARY JUDGMENT

FED.R.CIV.P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demon-

strates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *See Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *See Id.* at 249, 106 S.Ct. 2505.

## A. JURISDICTION

It is well-established that "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir.1998) (*citing Ang. v. Procter & Gamble Co.*, 932 F.2d 540, 544–45 (6th Cir.1991)). *See also Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir.1998) ("This expanded rule does not mean, however, that plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court."). However, the Sixth Circuit has held that "[w]hen the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred." *Davis*, 157 F.3d at 463. Furthermore, "where facts related with respect to the charged claim would prompt the EEOC to investi-

gate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* The Plaintiff has failed to comply with the administrative filing requirement and cannot meet either of the exceptions stated above.

■ The "Charge of Discrimination" filed by the Plaintiff with the Ohio Civil Rights Commission ("OCRC"), the "Notice of Charge of Discrimination" filed with the Equal Employment Opportunity Commission ("EEOC"), and the Complaint filed with the Pennsylvania Human Rights Commission ("PHRC")[1] respectively do not contain an allegation of national origin discrimination. (Defts. Dep.Exs. D and F.) Rather, they each contain a charge of race discrimination. Importantly, there is no evidence that any of the investigations conducted by the above agencies into race discrimination in fact revealed evidence of national origin discrimination. Moreover, the Plaintiff admitted in his deposition that he was not complaining about national origin discrimination, only race discrimination. (Pl.Dep. at 94, 97.) It follows, then, that the agencies involved in investigating the Plaintiff's race discrimination claim would not have attempted to reach a conciliation agreement with the Defendants based on the national origin discrimination claim he has filed in this Court. Accordingly, this Court lacks subject matter jurisdiction over the Plaintiff's claim for national origin discrimination and summary judgment is appropriate on both counts.

## B. NATIONAL ORIGIN DISCRIMINATION

Even assuming the Plaintiff's Complaint is properly before this Court, his claim for national origin discrimination fails as a matter of law. The legal framework in which Title VII claims are analyzed is well established.[2] In the absence of direct evi-

---

1. The PHRC Complaint was not marked as a defense deposition exhibit. It has been attached to the EEOC Notice of Charge of Discrimination which is marked Defendants' Deposition Exhibit F.

2. The Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42 U.S.Code, is generally applicable to cases involving alleged violations of R.C.

dence, to establish a prima facie case of discrimination, plaintiffs must use the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which has been modified where a member of a protected class has been denied an opportunity to transfer. *McDonnell Douglas*, as modified by *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998), requires a complainant to carry the initial burden of proving a prima facie discrimination case by demonstrating:

1) he belongs to a protected class;

2) at the time of his termination [or layoff] he was qualified for other available positions within the corporation;

3) the employer did not offer such positions to the plaintiff; and

4) a similarly-situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position, or other direct, indirect, or circumstantial evidence supporting an inference of discrimination.

*Ercegovich*, 154 F.3d at 351. Where a prima facie case of discrimination has been demonstrated, the defendant employer must then produce evidence of legitimate, nondiscriminatory reasons for its action. *See McDonnell Douglas, supra; Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991). If the Defendant is able to rebut Plaintiffs' prima facie case, the burden is on the plaintiff to discredit the employer by showing the proffered reasons were pretextual. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Ang v. Procter & Gamble Co.*, 932 F.2d at 548. However, the ultimate burden of persuasion always remains with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502; 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993).

■ The Plaintiff has claimed that because of his national origin he was not transferred by Ohio Edison, that Penn Power did not accept the transfer, and that other less-qualified linemen with less seniority were transferred and accepted over him.[3] The Plaintiff, at best, can only establish the first two elements of a prima facie case of national origin discrimination based on the alleged denial of an opportunity to transfer.[4] The Plaintiff is a member of a protected class and he was otherwise qualified as a lineman. However, the Plaintiff fails to establish the third element of a prima facie case because the undisputed evidence shows that Ohio Edison did not offer *any* laid off linemen the opportunity to transfer to Penn Power; and, no such transfers were made despite the availability of positions with Penn Power.

■ Additionally, the Plaintiff cannot meet the fourth element of a prima facie case of discrimination under Title VII. Ohio Edison did not fail to transfer the Plaintiff and Penn Power did not fail to accept the transfer. Rather, the Plaintiff did not apply for a Penn Power position in a timely manner following his layoff from Ohio Edison. Instead, he waited almost three months after the Ohio Edison layoff to send a cover letter and resume to Penn

---

Chapter 4112." *Little Forest Medical Center of Akron v. Ohio Civil Rights Commission*, 61 Ohio St.3d 607, 609, 575 N.E.2d 1164, 1167 (1991) (citing cases). Accordingly, the analysis of the Plaintiff's Title VII claim encompasses his claim under R.C. §§ 4112.02 and 4112.99.

**3.** The Plaintiff has not claimed that he was laid off from Ohio Edison because of his national origin.

**4.** Even under the traditional *McDonnell Douglas* analysis, the Plaintiff can only estab-

lish three of the elements of a prima facie case of discrimination: (1) the Plaintiff is a member of a protected class; (2) the Plaintiff was subject to an adverse employment decision; (3) the Plaintiff was otherwise qualified for employment as a lineman. The Plaintiff fails to establish that a similarly situated nonprotected employee was transferred in his stead as set forth *infra*. *See McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817. *See also Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992).

Power. Although the Plaintiff may have been more qualified and had more seniority than the Ohio Edison linemen employed by Penn Power, his failure to timely apply for a position caused him to miss an opportunity to be interviewed and possibly hired. Because the Plaintiff did not apply to Penn Power at the same time as the other laid off Ohio Edison linemen, he was not similarly situated with any relevant applicant who was a member of a non-protected class of persons. Accordingly, the Plaintiff cannot establish the fourth element of a prima facie case of national origin discrimination.

Moreover, based on the evidence before the Court from the Plaintiff's Complaint and his own deposition, it is clear that the Plaintiff cannot overcome the Defendants' articulated legitimate non-discriminatory reasons for not continuing his employment. First, Ohio Edison did not transfer *any* of its linemen to Penn Power. Second, Penn Power did not accept *any* transfers from Ohio Edison. Next, the Plaintiff did not apply in a timely fashion for openings at Penn Power despite his knowledge that an application was necessary. Finally, there is no evidence that Ohio Edison failed to transfer the Plaintiff and Penn Power failed to accept the transfer based on the Plaintiff's national origin. Accordingly, the Plaintiff's claims must fail.

## CONCLUSION

This Court is without subject matter jurisdiction over the Plaintiff's national origin discrimination claim because he has failed to file such a claim with the EEOC, OCRC, and PHRC. Nonetheless, upon considering the merits, the Plaintiff has not established a prima facie case of national origin discrimination. Even if the Plaintiff established a prima facie case, he could not overcome the burden of showing that the Defendants' legitimate non-discriminatory reasons for not transferring him were pretext for national origin discrimination.

Accordingly, the Defendants' Motion for Summary Judgment (Dkt.# 17) and Motion for Order Granting Summary Judgment (Dkt.# 22) are **GRANTED** with respect to both counts of the Plaintiff's Complaint.

**IT IS SO ORDERED.**