DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, appellant, Cheryl D. Wilson, maintains that the trial court erred in granting summary judgment to appellees, Toledo Public Schools, Toledo Federation of Teachers and Jewel Minarcin. Appellant sets forth the following assignments of error:
 {¶ 2} "I. The trial court erred in granting summary judgment for defendants as plaintiff was able to establish a prima facie case alleging racial discrimination and a genuine issue of material fact exists as to whether or not defendants had a legitimate, non-discriminatory reason for not renewing plaintiff's contract.
 {¶ 3} "II. The grant of summary judgment by the trial court for defendants was inappropriate as a genuine issue of material fact existed as to whether or not TPS correctly applied its own policies and procedures."
 {¶ 4} The undisputed facts of this case are as follows. Appellant, who is African-American, graduated from the University of Toledo in 1996 with a degree in psychology. She obtained a temporary substitute certificate in each of the next three years. This certificate allowed appellant to substitute in Business Education without any shorthand instruction or Psychology or Sociology classes. However, for the 1998-1999 school year, appellant was assigned by the Toledo Public Schools to a first grade class at Warren School as a long term substitute.
 {¶ 5} It is the policy of Toledo Public Schools to place long term substitutes who do not possess the proper certification for their class assignment into an intern program and assign him or her a mentor/consulting teacher. This policy is authorized by Article XVIII(D) of the collective bargaining agreement between Toledo Public Schools and the Toledo Federation of Teachers. Appellant was therefore placed in the program and mentored, that is, guided but not evaluated, by Dessa A. Jerkins, who is African-American. According to Jerkins, she informed appellant that she was being mentored, not evaluated, in the intern program.
 {¶ 6} Jerkins' written observations note appellant's problems with specific teaching procedures and list suggestions for improvements in those areas. In an affidavit, Jerkins avers that appellant was uncooperative because she did not believe that she should be in the intern program. Jerkins also states that although she recommended that appellant be released from the intern program, her progress was slow. She further notes that appellant had not demonstrated to Jerkins that she could be "consistent in the use of good teaching procedures."
 {¶ 7} Appellant was released from the intern program by the Intern Board of Review ("IBW") in April 1999 and notified, by letter, of her successful completion. The letter stated, nonetheless, that if appellant was given a contract in an area in which she was certified, she would be placed in the intern program and evaluated as an intern teacher.
 {¶ 8} Appellant obtained a certificate for teaching grades 1-8 in July 1999. She then entered into a limited one year contract with Toledo Public Schools to teach first grade at Warren School for the 1999-2000 school year. Appellant was placed in the intern program.
 {¶ 9} Appellant was provided with a copy of The Toledo Plan-Intern Intervention Evaluation ("The Toledo Plan") on more than one occasion, including the period during which she was a long term substitute. The plan requires that all newly hired teachers on one year contracts are subject to the intern program. The Toledo Plan, Part I(A)(1).
 {¶ 10} The Toledo Plan governs a system of peer evaluation which requires teachers to meet performance criteria in the specified areas of Teaching Procedure, Classroom Management, Knowledge of the Subject-Academic Preparation and Personal Characteristics and Professional Responsibilities. Id. at 12-17. Each intern teacher is assigned a consulting teacher. Id. at 1. Appellant's consulting teacher was Jewel Minarcin, who is Caucasian.
 {¶ 11} Pursuant to The Toledo Plan, each consulting teacher must observe the intern teacher a minimum of three times in his or her first year, that is, two semesters, in the program. Id. at Article VIII(A)(2). All observations must be followed by a conference with the intern teacher to discuss any deficiencies in any of the areas and the means to improve those deficiencies. Id. at Article VIII(B)(1). The intern teacher and her principal are entitled to receive a copy of the consulting teacher's written report. Id. at Article VIII(B)(5). Finally, the consulting teacher must file a Teacher Summary Evaluation Report indicating whether the intern teacher's performance is satisfactory or unsatisfactory in the specified areas on December 20 and on March 20 of the first intern year. Id. at Article VIII(C).
 {¶ 12} Appellant insisted that she completed the intern program the previous year and refused to cooperate with Minarcin in setting times for observation. Nevertheless, between October 1999 and December 1999, Minarcin observed appellant in the classroom four times for a total of over six hours and conferred with her over five hours after these observations.
 {¶ 13} The main area in which appellant displayed a lack of skills was in Teaching Procedures. In particular, Minarcin pointed out that, among other things, appellant failed to provide detailed lesson plans, teach using a variety of activities and a variety of instructional materials, wasted instructional time and lacked skill in making assignments. Throughout the entire evaluation period, Minarcin set performance goals for appellant and provided her with suggestions of both the means and materials necessary to improve her teaching procedures. However, due to appellant's lack of progress in acquiring the necessary skills, she received an unsatisfactory rating in the area of Teaching Procedures in Minarcin's December 20, 1999 Teacher Summary Evaluation Report.
 {¶ 14} Because appellant consistently refused to concede that she was required to be in the intern program and to cooperate with the consulting teacher, her performance in the area of Personal Characteristics and Professional Responsibility was also rated as unsatisfactory in the December 20, 1999 Teacher Summary Evaluation Report.
 {¶ 15} Between January 2000 and March 2000, Minarcin observed appellant's first grade class five times for a total of over nine hours and conferenced with appellant six times for over a total of four hours. Minarcin's observation reports continued to point out appellant's repeated deficiencies in the area of Teaching Procedures, particularly in the area of lesson planning and implementation of those lesson plans, knowledge of the content of a lesson presented to the class, the use of a variety of instructional materials and skill in making assignments. The consulting teacher also indicated that on more than one occasion appellant's performance in the area of Personal Characteristics and Professional Responsibility remained unsatisfactory. For example, appellant left a required Elementary Inservice training early and failed to cooperate with Minarcin in rescheduling a conference. Additionally, when, as part of the evaluation process, appellant was required to observe another first grade at a different school, she left at noon without informing anyone of her departure.
 {¶ 16} Because of the foregoing, appellant's March 20, 2000 Teacher Summary Evaluation Report rated her as unsatisfactory in both of the named areas.
 {¶ 17} In March 2000, appellant was notified that the IBW was recommending the nonrenewal of her limited teaching contract to the Superintendent of the Toledo Public Schools. Prior to the Superintendent's submission of that recommendation to the Toledo Public Schools Board of Education, appellant exercised her contractual right to appear before the IBW to appeal its decision. The date of May 2, 2000 was set for her appearance. However, in a letter dated April 17, 2000, appellant was notified that her teaching contract would not be renewed.
 {¶ 18} On July 5, 2000, appellant filed a complaint against appellees in the Lucas County Court of Common Pleas asking the court to declare her rights under The Toledo Plan. Specifically, appellant asked the court to declare that Toledo Public Schools violated The Toledo Plan by requiring her to undergo four, rather than two, semesters of evaluation by a consulting teacher. Appellant's second claim alleged racial discrimination and her third claim was for wrongful discharge. The wrongful discharge claim was based upon the alleged noncompliance with The Toledo Plan (four, rather than two, semesters of evaluation by a consulting teacher) and the failure to hold a hearing before the IBW prior to the date that the Superintendent recommended nonrenewal of her contract[1].
 {¶ 19} Appellees answered. After conducting discovery, Toledo Public Schools and Jewel Minarcin filed a motion for summary judgment; Toledo Federation of Teachers filed a separate motion for summary judgment. The trial court granted appellees' motions for summary judgment. This appeal followed.
 {¶ 20} We review appellant's assignments of error under a de novo standard. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Appellees can prevail on their motions for summary judgment only if: (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving parties are entitled to summary judgment as a matter of law. Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
 {¶ 21} In meeting this standard, appellees have the burden to prove that no genuine issue of material fact exists by informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a triable issue on any or all of the essential elements of the appellant's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. Once appellees satisfy this initial burden, the burden shifts to the appellant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. Id.
 {¶ 22} We shall first consider appellant's second assignment of error. In that assignment, appellant contends that the trial court erred in granting appellees summary judgment on her "contract" claim. Actually, this assignment addresses both appellant's request for a declaratory judgment and the "wrongful discharge claim" in that it involves the construction and application of The Toledo Plan.
 {¶ 23} Appellant argues that The Toledo Plan is ambiguous regarding "mentoring" and that the documents and process followed by Jerkins in 1998-1999 was identical to that employed by Minarcin for evaluating appellant in 1999-2000. She therefore concludes that the evidence shows that she could not be expected to believe that her first year in the intern program was not 1998-1999. Apparently, her argument is that The Toledo Plan was misapplied in her case because she was evaluated by a consulting teacher for four semesters rather than the two mandated semesters.
 {¶ 24} The Toledo Plan clearly states under Article I that allteachers on one year contracts that are newly hired shall be placed in the intern program. It also states that long term substitutes "will be evaluated by intern consulting teachers from the initial placement if it is probable that the assignment will last for at least for one semester." The Toledo Plan, Article I(D). Thus, appellant knew or should have known from the unambiguous language of the plan that she was subject to two separate one year (consisting of two semesters each) internships that were supervised by a consulting teacher.
 {¶ 25} Moreover, the undisputed facts show that appellant could not have confused "mentoring" with "evaluation" during the year she was a long term substitute. To "mentor" is to "guide" or "counsel." Merriam Webster's Tenth Collegiate Dictionary (10 Ed. 1993) 726. To "evaluate" has a specialized meaning in The Toledo Plan and certain terms and procedures must be followed by the consulting teacher. See infra.
 {¶ 26} In the case under consideration, Jerkins observed appellant three times in the first semester and three times in the second semester of the 1998-1999 school year. However, her reports make only recommendations or suggestions. Jerkins neither used the evaluation terms "satisfactory" or "unsatisfactory" in discussing appellant's performance nor did she ever set performance criteria in any area, such as Teaching Procedures. The Teacher Summary Evaluation Report for each semester is not filled out. The December 20, 1998 report simply states that Jerkins recommends that appellant participate in a second semester of mentoring, and the March 20 report recommends that she be released from the mentoring program. Under The Toledo Plan, the evaluation of a teacher includes such terms and the use of the Teacher Summary Evaluation Report. Id. at Article VIII(C). Therefore, it is apparent that Jerkins' role during the 1998-1999 school year was that of guide or counselor rather than that of evaluator.
 {¶ 27} In sum, appellant failed to offer any facts to create a question of fact on the issue of whether either any ambiguity in The Toledo Plan or in the mentoring program led her to believe that she had completed that portion of the intern program that involved working with a consulting teacher during the year she was a long term substitute or that the plan was misapplied, in any way, in her case. Therefore, the trial court did not err in granting appellees' motions for summary judgment on this issue as a matter of law, and appellant's second assignment of error is found not well-taken.
 {¶ 28} Appellant's first assignment of error addresses the trial court's grant of summary judgment on her claim of discrimination brought pursuant to R.C. 4112.02(A) and 4112.99.
 {¶ 29} R.C. 4112.02 provides in relevant part:
 {¶ 30} "It shall be an unlawful discriminatory practice:
 {¶ 31} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 32} Ohio follows the federal standard in the area of discrimination law. Little Forest Med. Ctr. of Akron v. Ohio Civ. RightsComm. (1991), 61 Ohio St.3d 607, 609-610. Under that law, the plaintiff may provide direct evidence of discrimination or establish a prima facie case of discrimination indirectly by following the standard established in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792. Byrnes v. LCICommunications Holdings Co. (1996), 77 Ohio St.3d 125, 128.
 {¶ 33} Here, appellant failed to offer any admissible evidence of direct discrimination. The alleged acts of discrimination leveled against her consulting teacher consist of hearsay and innuendo or are merely cited out of context. Therefore, appellant was required to establish a prima facie case of discrimination by showing: (1) she belongs to a protected class; (2) she was qualified for the position that she held; (3) she was terminated despite her qualifications; and (4) she was replaced by someone outside the protected class. McDonnell Douglas Corp. v.Green, 411 U.S. at 802. The establishment of a prima facie case of discrimination under McDonnell Douglas creates a presumption that the employer unlawfully discriminated against the employee. Texas Dept. ofCommunity Affairs v. Burdine (1981), 450 U.S. 248, 254.
 {¶ 34} In the case before us, we must agree with the trial court in finding that appellant failed to offer specific facts creating a genuine issue of material fact as to all the elements of a prima facie case of racial discrimination in an employment context. Appellant is an African-American and she was terminated from her employment. However, simply being certified to teach in the elementary grades is insufficient, in and of itself, to create a triable issue on the question of whether appellant was qualified to teach first grade.
 {¶ 35} In order to demonstrate qualification for a position, a plaintiff must show she has the capability of performing the work and that she is meeting the employer's legitimate expectations. Landon v. ABBAutomation, Inc., 2002 Ohio 3376; Ebright v. Video News Super Stores
(July 6, 2001), Lucas App. No. L-00-1369; Smith v. Greater ClevelandRegional Transit Auth. (May 24, 2001), Cuyahoga App. No. 78274. As applied to this cause, appellant was expected to meet specific sets of criteria as provided by The Toledo Plan. It is undisputed that these criteria are legitimate expectations of a one year, limited contract teacher in her first year in the intern program. While appellant did offer evidence to verify that she was capable of performing her required duties as a first grade teacher, she did not present specific facts to create a question of fact on the question of whether she was meeting her employer's legitimate expectations for performance of those duties.
 {¶ 36} Moreover, even if appellant was assumed to have created a question of fact as to the establishment of a prima facie case of discrimination, no triable issue remained for trial on this claim for the following reasons.
 {¶ 37} If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Thereafter, the burden again switches to the plaintiff, who must show that defendant's stated justification is in fact merely a pretext for unlawful discrimination. Id. Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible. Id. at 256." Detzel v. Brush Wellman, Inc. (2001), 141 Ohio App.3d 474, 483.
 {¶ 38} In this instance, appellees set forth specific facts showing that appellant's performance as a teacher did not meet standards set for all teachers in the Toledo Public Schools. Thus, they articulated a legitimate, nondiscriminatory reason for the nonrenewal of appellant's teaching contract. Appellant then failed to offer any facts showing that her employer was motivated by a discriminatory reason not to renew her contract or to show that its justification for the nonrenewal was not credible. Accordingly, the trial court did not err in granting appellees' motions for summary judgment on appellant's claim of racial discrimination, and appellant's first assignment of error is found not well-taken.
 {¶ 39} On consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
 JUDGMENT AFFIRMED.
Knepper and Pietrykowski, JJ., concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] The trial court found, in essence, that because the collective bargaining agreement sets forth no specific time frame to hear an intern teacher's appeal, the fact that the hearing was held after the Superintendent of the Toledo Public Schools was notified of the IBW's recommendation has no effect on the nonrenewal of appellant's contract. Appellant does not dispute this finding on appeal.