[Cite as *Brehm v. MacIntosh Co.*, 2019-Ohio-5322.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John F. Brehm, | : | |
| Plaintiff-Appellant, | : | No. 19AP-19 |
| | | (C.P.C. No. 17CV-7938) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The MacIntosh Company, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 24, 2019

**On brief:** *William J. O'Malley*, for appellant. **Argued:** *William J. O'Malley.*

**On brief:** *Dinsmore & Shohl, LLP,* and *Jan E. Hensel* and *Jacqueline N. Rau*, for appellee. **Argued:** *Jan E. Hensel.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, John F. Brehm, appeals from a decision of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, The MacIntosh Company, on Brehm's age discrimination claim under R.C. Chapter 4112. Because the evidence does not present a genuine issue of material fact for trial, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} The MacIntosh Company ("MacIntosh") owns and operates 7 skilled nursing and assisted living facilities in the Columbus, Ohio area. Brehm was hired in February 2016 to fill the position of Administrator of the New Albany facility. Brehm was interviewed and hired by Chief Operating Officer John Dunn, President and Chief

Financial Officer Curt Anderson, and Human Resources Director Brian Kinzer.  Brehm was 60 years old at the time of his hire.

{¶ 3}  As Administrator, Brehm's responsibilities included "ensuring financial strength and operating efficiency with growth," providing "direct oversight and management to all departments of the facility," and maintaining "regular meetings with key management and project teams to review status, issues and innovations."  (Brehm Depo. Ex. 5)   Brehm also was required to attend and participate in monthly financial meetings with MacIntosh's executive board.

{¶ 4}  It is undisputed that during Brehm's tenure as Administrator, the New Albany facility's revenue experienced a downturn.  It is further undisputed that during Brehm's time as Administrator, the New Albany facility's net income decreased 37.2 percent compared to the previous year, from $1,098,558 to $689,998.  In addition, the office supply budget was continuously exceeded during Brehm's time as Administrator, and an analysis of the office supply issue was not completed by Brehm until September 2016, six months after he was first notified of the issue.

{¶ 5}  In December 2016, Dunn created a new formalized agenda for all Administrators to use in the monthly financial meetings, beginning with the meeting to be held in February 2017.  The purpose of the new agenda was to assist the Administrators in presenting each facility's financial information in a detailed manner.  Although Brehm utilized the new agenda for the February 2017 monthly financial meeting, it is undisputed that the completed agendas of all the other Administrators were more detailed and comprehensive than Brehm's.

{¶ 6}  Subsequent to the February 2017 financial meeting, on February 22, 2017, Dunn sent an e-mail to Brehm with the subject "Annual Eval Info".  In the e-mail, Dunn requested that Brehm provide copies of multiple meeting agendas, notes, and certain communications with managers.  In response to the e-mail, Brehm provided Dunn with four handwritten agendas for manager meetings, which undisputedly were not provided to the department leaders at the time the meetings were held.  Brehm also provided a copy of his weekly calendar indicating that department meetings had been scheduled on Wednesdays and Fridays and some handwritten notes to reflect meetings that occurred with four out of his eight department managers.  Brehm advised Dunn that he did not have any documentation from manager meetings other than that provided.

{¶ 7} Dissatisfied with both the quantity and quality of the documentation provided by Brehm in response to the February 22, 2017, e-mail, coupled with his ongoing concern that Brehm was not effectively managing the facility, Dunn recommended to Anderson that Brehm's employment be terminated. Anderson agreed, and on March 10, 2017, Dunn met with Brehm and informed him that his employment with MacIntosh was being terminated. At the time of his termination, Brehm was 61 years old. Ultimately, Brehm was replaced as Administrator by a person who was 34 years old.

{¶ 8} Brehm filed his complaint on September 1, 2017, alleging age discrimination in violation of R.C. Chapter 4112. MacIntosh filed a motion for summary judgment on October 8, 2018. After the parties fully briefed the issues, the trial court granted the motion for summary judgment on December 14, 2018. This appeal followed.

## II. Assignment of Error

{¶ 9} Brehm assigns the following as his sole error:

> The trial court erred when it granted summary judgment to defendant the Macintosh Company on plaintiff-appellant's claim of age discrimination.

## III. Standard of Review

{¶ 10} An appellate court reviews summary judgment under a de novo standard. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, citing *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). Summary judgment is proper only when the parties moving for summary judgment demonstrate (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden,

summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 12} "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Companies*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

{¶ 13} Brehm argues the trial court erred in granting summary judgment because he submitted evidence demonstrating a genuine issue of material fact as to whether MacIntosh discriminated on the basis of age in violation of R.C. Chapter 4112. R.C. 4112.14(A) generally prohibits discriminatory employment practices, including discrimination on the basis of age. *See Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, ¶ 9. R.C. 4112.02(L) specifically provides a right to file an age discrimination action: "An aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age as provided for in this section by instituting a civil action, within one hundred eighty days after the alleged unlawful discriminatory practice occurred, in any court with jurisdiction for any legal or equitable relief that will effectuate the individual's rights." In examining state employment discrimination claims brought pursuant to R.C. Chapter 4112, Ohio courts turn to federal case law interpreting Title VII of the Civil Rights Act of 1964. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 15.

## IV. Law and Analysis

### A. The McDonnell Douglas Burden-Shifting Framework

{¶ 14} "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent" and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th

Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). Absent direct evidence of age discrimination, an appellant may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as adopted by the Supreme Court of Ohio in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), and modified in *Coryell*. The *McDonnell Douglas* framework consists of three parts (1) the prima facie case required to be established by the plaintiff; (2) the employer's burden to produce a legitimate nondiscriminatory reason for the challenged action; and (3) the employee's burden to demonstrate that the employer's proffered reason is pretext and that discrimination is the actual reason for the challenged action.

### 1. The Prima Facie Case

{¶ 15} Under the *McDonnell Douglas* framework as revised in *Coryell*, a plaintiff must first establish a prima facie case by demonstrating that he or she "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." *Coryell* at paragraph one of the syllabus, modifying and explaining *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501 (1991), syllabus. Establishing a prima facie case " 'creates a presumption that the employer unlawfully discriminated against the employee.' " *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 11, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

### 2. The Employer's Burden of Production

{¶ 16} Once a plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for discharging the employee. *Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393, ¶ 64, citing *Burdine* at 253. The employer meets its burden of production by submitting admissible evidence that " '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action,' " and in doing so rebuts the presumption of discrimination that the prima facie case establishes. (Emphasis sic.) *Williams* at ¶ 12, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

### 3. Pretext

{¶ 17} Finally, if the employer meets its burden of production, a plaintiff must prove by a preponderance of the evidence that the employer's legitimate,

nondiscriminatory reason was merely a pretext for unlawful discrimination. *Barker* at 148. Importantly, the ultimate burden of producing " 'sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant intentionally discriminated against him' " remains with the plaintiff at all times. *You* at ¶ 58, quoting *Johnson v. Kroger Co.,* 319 F.3d 858, 866 (6th Cir.2003) (Alteration in original.) (Citation omitted.). Furthermore, mere conjecture that the employer's proffered reason is pretext is insufficient to withstand a motion for summary judgment. *Hoyt v. Nationwide Mut. Ins. Co.,* 10th Dist. No. 04AP-941, 2005-Ohio-6367, ¶ 59, citing *Surry v. Cuyahoga Community College*, 149 Ohio App.3d 528, 2002-Ohio-5356, ¶ 24 (8th Dist.). Rather, to avoid summary judgment in favor of the employer, a plaintiff must produce some evidence that the employer's proffered reason is factually untrue. *Id.* An employer's proffered reason " 'cannot be proved to be a pretext for discrimination unless it is shown both that the explanation was false, and that discrimination was the real reason.' " *Williams* at ¶ 14, citing *Hicks* at 515.

### B. Brehm Established a Prima Facie Case

{¶ 18} In the instant case, it is undisputed that Brehm meets the first, second and fourth requisite elements to establish a prima facie case of age discrimination. Specifically, the parties agree Brehm (1) was 61 years old at the time of termination and therefore he was a member of the statutorily protected class; (2) was discharged; and (4) was replaced by a 34 year-old woman. MacIntosh argues, however, that Brehm has not established a prima facie case of age discrimination because he did not meet the third element, which requires him to be qualified for his position as Administrator of the New Albany facility. More to the point, MacIntosh insists that Brehm was not qualified for his position because under his leadership, the New Albany facility's financial performance declined, and Brehm was unable to demonstrate that he understood the reasons for the decline and suggest a plan to reverse it. MacIntosh argues that because its "legitimate expectations" regarding the financial performance of the facility, ways to improve it, and other key functions of the job were not being met by Brehm, he therefore was not qualified for his position as Administrator.

{¶ 19} The foregoing argument, however, improperly conflates the first and second stages of the *McDonnell Douglas* framework. Thus, although both MacIntosh and the trial court utilized a subjective test for determining whether Brehm was qualified, this

was incorrect.[1]  Instead, the test is an objective one.  *Leib v. Famous Distrib.*, S.D.Ohio No. 2:03-cv-361 (Feb. 15, 2006), citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir.2003).  "The only relevant inquiry at the *prima facie* stage of the analysis is whether the employee was <u>objectively</u> qualified for the position, taking into consideration the employee's education, experience, and skills." (Emphasis sic.) *Id.*  At this stage, " '[a] court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge.' " *Erwin v. Village of Morrow*, S.D.Ohio No. 1:16-cv-1166, (Apr. 4, 2019), quoting *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir.2002).  Put another way, "a court cannot conflate the *prima facie* analysis with the second stage of the *McDonnell Douglas* inquiry." *Leib at \*30* citing *Wexler* at 575-76.  Rather, "the focus at this point should be on Plaintiff's objective qualifications, such as his experience in the industry and demonstrated possession of the required general skills." *Chitwood v. Dunbar Armored, Inc.*, 267 F.Supp.2d 751, 756 (S.D.Ohio 2003), citing *Wexler* at 575-76. "The *prima facie* burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler* at 575-76.

{¶ 20}  Here, the record evinces the following with regard to Brehm's qualifications. Brehm possesses a four-year degree from Muskingum College.  [R. 40 – Brehm Depo. p. 9:6-9]  He completed a nine-month administrator-in-training course in April 2010 and obtained his nursing home administrator license which became effective in July 2010. [R. 40 – Brehm Depo. p. 9:15-24; 31:13-14] Prior to working for MacIntosh, Brehm had been an administrator at several other skilled nursing care center and assisted living facilities for 6 years.  Furthermore, before becoming a licensed nursing home administrator, Brehm had worked for more than 30 years in various senior management positions in the health care industry, employee benefits industry, and managed care industry, and in those capacities he dealt with complex budgets and oversaw large operations.  The court finds the foregoing evidence demonstrates Brehm was objectively qualified for his position of Administrator of the New Albany facility.

---

[1] The cases relied upon by both MacIntosh and the trial court are Eighth District Court of Appeals cases which are not binding on this court.  Furthermore, those cases pre-date the relevant federal cases properly applying Ohio law on this issue.

{¶ 21} Therefore, because Brehm demonstrated he was qualified for his position, we find Brehm established a prima facie case of age discrimination.

### C. MacIntosh Articulated a Legitimate, Nondiscriminatory Reason for Terminating Brehm's Employment

{¶ 22} MacIntosh asserts Brehm was terminated because his work performance was substandard. More specifically, MacIntosh asserts that during Brehm's time as Administrator of the New Albany facility, its net income decreased significantly, from $1,098,558 in 2015 to $689,998 in 2016, a loss of 37.2 percent[2]. Importantly, as noted previously, the fact of this sizable drop in net income was conceded by Brehm during his own deposition. MacIntosh also asserts Brehm exhibited an apparent inability to comprehend the financial performance of the New Albany facility and that he was not prepared to discuss it at monthly financial meetings or to present any recommendations for improvement. Finally, MacIntosh asserts Brehm was not conducting required meetings — or at least not effective meetings — and was not effectively leading his staff, as evidenced by the lack of written meeting agendas and follow-up documentation from meetings. In short, MacIntosh asserts Brehm was terminated for poor job performance.

{¶ 23} Although Brehm argues the reasons proffered by MacIntosh for its termination of Brehm are merely pretext for age discrimination, he does not contest that MacIntosh articulated a legitimate, nondiscriminatory reason by "clearly set[ting] forth, through the introduction of admissible evidence, the reasons for the [appellant's termination]." *Burdine* at 255. Furthermore, the court finds MacIntosh has submitted admissible evidence which, " '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action,' " and so has rebutted the presumption of discrimination that the prima facie case establishes. (Emphasis sic.) *Williams* at, ¶ 12, quoting *Hicks* at *509*.

{¶ 24} Accordingly, MacIntosh has met its burden of production and the requirement for this stage in the *McDonnell Douglas* analysis has been met.

### D. Brehm Failed to Raise a Genuine Issue of Material Fact as to Whether MacIntosh's Reason for Discharge Was Pretextual

---

[2] Although MacIntosh states on page 12 in its motion for summary judgment that New Albany's "gross revenue" dropped this amount, this is a misstatement. The evidence shows that it was net income which fell.

{¶ 25} The final step in the *McDonnell Douglas* analysis is whether Brehm demonstrated the legitimate nondiscriminatory reason for discharge proffered by MacIntosh was mere pretext for unlawful discrimination because of age.

{¶ 26} In order to establish that defendant's reason was pretext, appellant must show by a preponderance of the evidence at least one of the following: " '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.' " *Sweet v. Abbott Foods, Inc.*, 10th Dist. No. 04AP-1145, 2005-Ohio-6880, ¶ 34, quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994), *overruled on other grounds* as recognized by *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." *Johnson* at  866,  quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir.2001). (Alteration in original.) (Internal quotations omitted).

{¶ 27}  To make the first type of showing, a plaintiff must provide evidence that the proffered reason "never happened, *i.e.*, that [it is] 'factually false'." *Manzer* at 1084; *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 600 (6th Cir.2001) (proving that the employer's reasons had no basis in fact requires "evidence that the reasons given by the employer simply did not happen").

{¶ 28} Under the second showing, a plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal." (Emphasis sic.) *Manzer* at 1084.  The plaintiff must then show "circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." (Emphasis sic.)  *Id.*  Put another way, the plaintiff must show "that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or cover-up." *Id.*

{¶ 29} Under the third showing, a plaintiff must show that other similarly-situated employees, "particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.*  To demonstrate that a co-worker is similarly-situated, "the plaintiff and the employee with whom the plaintiff seeks to compare himself

or herself must be similar in 'all of the *relevant* aspects.' " (Emphasis sic.) *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998), quoting *Pierce v. Commonwealth Life Ins. Co.,* 825 F.Supp. 783, 802 (E.D. Ky.1993). In the context of an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment, to be deemed "similarly-situated" , " 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Ercegovich* at 352, quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992).

{¶ 30} In this case, although not expressly enumerated as such, Brehm's attempts to show that MacIntosh's explanation for his termination is pretextual amount to contentions that MacIntosh's reasons for his termination are either (1) factually untrue, (2) did not actually motivate his discharge, or (3) are insufficient to motivate his discharge under the first, second and third methods of showing pretext set forth in *Manzer*. While any or all of the three methods may be used to establish pretext and avoid summary judgment, as explained below, the evidence offered by Brehm does not create a genuine issue of material fact under any of them.

{¶ 31} Regarding the factual accuracy of MacIntosh's explanation that Brehm was terminated for poor job performance, Brehm failed to rebut MacIntosh's evidence with his own evidence. Instead, he devoted much of his memorandum in opposition and affidavit to attempting to justify why he failed to meet budget objectives related to revenue, net income, and office supply expenses, arguing why the objectives were unrealistic, and denying in conclusory fashion MacIntosh's assertions that he was unprepared for monthly financial meetings and not conducting required meetings with and effectively leading his staff. Brehm has offered no evidence beyond the allegations contained in his affidavit that would rebut the factual accuracy of MacIntosh's evidence in support of its stated reasons for terminating Brehm. Indeed, Brehm admits in both his affidavit and deposition testimony that revenue decreased during his tenure as Administrator, and admits in his deposition testimony that net income decreased 37.2 percent compared to the previous year, from $1,098,558 to $689,998.[3] The evidence, including Brehm's own deposition

---

[3] Curiously, Brehm does not address the 37.2 percent decrease in net income in his affidavit.

testimony, does not establish a genuine issue of material fact concerning the accuracy of MacIntosh's explanation for terminating Brehm under the first method for demonstrating pretext.

{¶ 32} Turning to Brehm's attempt to show that MacIntosh's explanation for his termination is pretextual under the second method, i.e., that MacIntosh's proffered reason for termination is merely pretext because it did not actually motivate his discharge, Brehm points to the following. First, Brehm contends that what he was told at the time of his termination interview is not what MacIntosh has articulated now. More specifically, Brehm contends that during his termination meeting with Dunn he was told he was "not a good fit" , "things are too fast for you" , and "the investors are unhappy." Brehm argues that not only do these different reasons for his termination support his theory that MacIntosh concocted more specific reasons for his termination post-litigation, but that they evince ageist animus. However, "[i]solated and ambiguous comments 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.' " *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025 (6th Cir.1993), quoting *Gagne v. Northwestern Natl. Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989), *cert. denied,* 510 U.S. 861 (1993). Furthermore, in his deposition, Dunn denied making any comment that the investors were unhappy and testified that he could not recall if he had said things were too fast for Brehm. Dunn also testified in his deposition that he *did* recall "indicating to him that I think his performance was substandard" (Dunn Depo, pg. 67) during his termination meeting with Brehm. Nevertheless, even assuming the three comments attributed to Dunn by Brehm were made, and construing those comments in Brehm's favor, the court finds they are too ambiguous and abstract to permit an inference of pretext. Moreover, the fact that MacIntosh's articulated reasons for the termination decision were not all revealed to him at his termination interview with Dunn does not lead to the conclusion that MacIntosh's decision was motivated by age, particularly where, as here, the record supports the factual accuracy of MacIntosh's proffered reason for termination. *Butler v. Ohio Power Co.,* 6th Cir. No. 95-3547, *26 (July 16, 1996). Brehm's contention that he has demonstrated "after-the-fact" pretext because what he was told at the time of his termination is different from what MacIntosh has articulated now lacks merit.

{¶ 33} Brehm also contends that no one ever told him about any of the shortcomings concerning his job performance prior to his termination, either orally or in writing, and that MacIntosh never instigated formal disciplinary procedures. But where there is no requirement that an employer use progressive discipline prior to the termination of one of its employees, the failure to subject an employee to progressive discipline does not establish pretext of age discrimination. *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 19, citing *Wigglesworth v. Mettler Toledo Internatl., Inc.*, 10th Dist. No. 09AP-411, 2010-Ohio-1019, ¶ 24 ("[d]eviance from a progressive discipline policy does not indicate pretext, especially when the employer warns an employee that it may disregard its policy if it chooses").

{¶ 34} Here, there is no evidence indicating that MacIntosh was required to apply its progressive discipline policy to Brehm prior to terminating his employment. Indeed, Dunn attested in his supplemental affidavit that since he has been employed by MacIntosh, the consistent practice has been not to apply progressive discipline to Administrators of its facilities. Dunn also attested in his supplemental affidavit that the financial performance of the New Albany facility, including its revenue and net income, was discussed with Brehm during every monthly financial meeting. In addition, Anderson testified in his deposition that he and Dunn verbally counseled Brehm on his financial performance during financial and operational meetings. Other than his conclusory allegations in his affidavit, Brehm has failed to submit evidence that rebuts the evidence submitted by MacIntosh on this point. Thus, Brehm has failed to raise a genuine issue of material fact on the issue of whether Brehm was ever told prior to his termination that his work performance was substandard.

{¶ 35} As additional support for his contention that his own poor performance was not the actual motivation for MacIntosh's decision to terminate his employment and instead was merely pretext for age discrimination, Brehm also points to the fact that two other Administrators in the protected class — namely Greg Carnes and Lura Sandy — were terminated and ultimately replaced by younger people. Brehm, however, has not provided sufficient evidence to support an inference of pretext based on this contention of "pattern and practice." Notably, Brehm states in a footnote in his opening brief that "[t]he complete and fast replacement of all of the older Administrators is stunning from a statistical standpoint." (Appellant Brief at 50, fn. 13). Although it is true that "statistical

evidence may prove discrimination when it shows a pattern of conduct against a protected group that, if unrebutted, would allow the inference of intentional discrimination against individual members , * * * " *see Swiggum v. Ameritech Corp.,* 10th Dist. No. 98AP-1031 (Sept. 30, 1999), citing *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1466 (6th Cir.), *cert. den.*, 498 U.S. 878 (1990), in this case, the record is utterly devoid of any such "statistical" evidence. Instead, the sole evidence Brehm has submitted on this point is his own lone affidavit consisting of purely anecdotal and self-serving allegations in ostensible support of his "pattern and practice" theory.

{¶ 36} It is well-established that "the evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions" and that "a 'party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.' " *Eichenberger v. Tucker*, 10th Dist. No. 12AP-515, 2013-Ohio-805, ¶ 9, quoting *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. No. CA2009-07-178, 2010-Ohio-2961, ¶ 10, citing *TJX Companies, Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, ¶ 30 (8th District); *see also Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718, ¶ 24 (7th District) (generally, self-serving affidavits cannot be used by the nonmoving party to survive summary judgment). Furthermore, we have previously found that "in the absence of evidence as to the circumstances surrounding those decisions (i.e. evidence of discriminatory action against other employees discharged by [the employer]), the fact that workers of a particular age left the company is insufficient to support a finding of age discrimination." *Swiggum*. Here, the record simply does not reveal any evidence regarding the circumstances surrounding the decisions to terminate either Greg Carnes or Lura Sandy. Having failed to submit sufficient evidence to support his contention that the reasons for Brehm's termination proffered by MacIntosh are mere pretext for age discrimination and did not actually motivate his discharge, Brehm has failed to establish a genuine issue of material fact under the second method for demonstrating pretext.

{¶ 37} Finally, under the third method for demonstrating pretext, Brehm contends that other Administrators who were not in the protected class received more favorable treatment or were not terminated despite their own poor job performance. Specifically, Brehm claims that Crystal Moore, who was allegedly "in her 30s" (Appellant

brief at 22), had been the Administrator of the Whetstone Care Center for six months when it failed its Annual Department of Health Survey and was placed on "Immediate Jeopardy" status (Appellant brief at 25), yet rather than being terminated, she was assigned to another facility as Administrator. Similarly, Brehm claims that Amanda Meeks, who was also allegedly "in her 30s" (Appellant brief at 26), was the Administrator of the Monterey Care Center and that it was losing money, yet instead of being terminated, she was reassigned as Administrator of the Mill Run facility. As explained below, Brehm's contentions fail to demonstrate pretext.

{¶ 38} First, as discussed previously, to demonstrate pretext under the third method, a plaintiff must show that other similarly-situated employees, particularly employees not in the protected class, were not terminated "even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer* at 1084. Contrary to Brehm's statements that Moore and Meeks are both "in [their] 30s," they are not. Instead, the record shows that Moore was forty-four years old and Meeks was 40 years old during the relevant time frame. (Dunn Supp. Aff. at ¶ 4-5.) Brehm has provided no admissible evidence to the contrary. Therefore, these other employees are actually in the same protected class as that of Brehm. Furthermore, the evidence does not show that Moore engaged in "substantially identical conduct" to that of Brehm. Instead, the evidence shows that Moore was the Administrator of a facility that had a poor Annual Department of Health Survey — but this is not a reason cited by MacIntosh as grounds for Brehm's termination.

{¶ 39} Next, to demonstrate that a co-worker is similarly-situated, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.' " *Ercegovich* at 352, quoting *Pierce* at 802. To be deemed "similarly-situated," " 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Ercegovich* at 352, quoting *Mitchell* at 583 (6th Cir.1992).

{¶ 40} As noted previously, Moore's alleged transgression involved a poor showing on the Annual Department of Health Survey. This is simply not the same conduct for which Brehm was terminated; therefore, Brehm and Moore are not "similarly-situated"

for purposes of this analysis. As for Meeks, MacIntosh concedes that Monterey was experiencing operational and financial difficulties during Meeks' tenure. However, in his deposition and in his supplemental affidavit, Dunn explained that Monterey Care Center has historically experienced these challenges for various reasons, including that it is a much older facility than the other facilities (including New Albany, the facility at which Brehm was Administrator) and because of its physical characteristics which make it harder to fill beds (i.e., half of all of its beds are within four-bed wards). This explanation provides "differentiating or mitigating circumstances" that distinguishes both the conduct of Meeks and MacIntosh's response to it so as to prevent Meeks from being an employee who was "similarly-situated" to Brehm. Thus, Brehm has failed under the third method for demonstrating pretext to submit sufficient evidence to support his contention that the reasons for Brehm's termination proffered by MacIntosh are mere pretext for age discrimination because they are insufficient to motivate discharge. Accordingly, he has failed to establish a genuine issue of material fact under the third method for demonstrating pretext.

{¶ 41} In the final analysis, Brehm has failed to produce sufficient evidence from which a reasonable jury could reject as pretextual the employer's legitimate nondiscriminatory reasons for termination of poor and substandard work performance. Brehm has provided no deposition testimony or even affidavits from any of the other employees whom he insists were either treated the same as him (terminated because of their age) or better than him despite their own alleged poor job performance. He has provided no deposition testimony or affidavits from any of his former subordinates who may have been able to corroborate his contentions that he was effectively leading his team, having meetings as required, and generally performing his job functions well, as he attests in his own affidavit. He has provided no statistical evidence or expert testimony in support of his theory of "pattern and practice" discrimination. Instead, the only evidence submitted by Brehm in rebuttal to MacIntosh's motion for summary judgment and the evidence upon which it is properly supported is his own affidavit, which largely consists of conclusory and self-serving allegations.[4] As discussed above, this is simply not enough to

---

[4] Nor can Brehm be heard to complain at this stage, as he does on page 26, footnote 11 of his opening brief that MacIntosh refused to provide in discovery certain documents and/or other information requested that may have aided Brehm in defeating the motion for summary judgment. Brehm could have availed himself of the remedies provided for in the Civil Rules governing discovery, including but not limited to a motion to compel, yet inexplicably he did not.

survive an otherwise properly supported motion for summary judgment. Accordingly, there are no genuine issues of material fact in this case, it was not error for the trial court to grant summary judgment in favor of MacIntosh, and Brehm's sole assignment of error is overruled.

## V. Disposition

{¶ 42} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J. and NELSON, JJ., concur.