[Cite as *Hinton v. Ohio Dept. of Youth Servs.*, 2022-Ohio-1598.]

| | |
|---|---|
| ROGER HINTON, et al. | Case No. 2021-00063JD |
| Plaintiffs | Judge Patrick E. Sheeran<br>Magistrate Gary Peterson |
| v. | |
| OHIO DEPARTMENT OF YOUTH SERVICES, et al. | DECISION |
| Defendants | |

{¶1} Pursuant to L.C.C.R. 4(D), Defendants' motion for summary judgment is now before the Court for a non-oral hearing. For the reasons stated below, the Court GRANTS the motion.

**Standard of Review**

{¶2} Motions for summary judgment are reviewed under the standard set forth in Civ.R. 56(C), which states, in part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim."  *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).  To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C).  *Id.* at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden outlined in Civ.R. 56(E), which states, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**Factual Background**

{¶4} Plaintiffs Denise Guess and Roger Hinton bring claims for employment discrimination based on race, including wrongful termination, hostile work environment, and retaliation, against Defendants Department of Youth Services (DYS) and Department of Rehabilitation and Correction (DRC) as a result of various incidents that led to their involuntary disability separation.  Since 1991, Plaintiffs have been employed with DYS and have held various positions.  Plaintiff Guess, an African American female, became an Infrastructure Specialist I for DYS in 2013.  Plaintiff Hinton, an African American male, became an Information Technologist 3 for DYS in 2016.  At the time of their disability separation, Plaintiffs worked at the Information Technology (IT) Help Desk (the help desk) as a part of a services project that Defendants shared.  Guess Depo., p. 40, 45, 61-62; Hinton Depo., p. 34-36, 60-61, 95, 100.

{¶5} The help desk was set up in an area occupied by DRC and Plaintiffs worked alongside other staff that were either employed by or contracted with DRC. *Id.* The help desk has nine staff members: six DRC employees, including Chris McCoy, Tim Fornal, Jimmy Long, Noral Cohen, Braeden Ramge, and Steve Rayburn; two DYS employees, Guess and Hinton; and one contractor, Tyler Thompson (formerly Tyler Gilchrist). Guess Depo., 136; Hinton Depo., p. 168; Cavendish Depo., p. 9-11. Thompson, a mixed-race female, is an employee of Sophisticated Systems who is contracted by DRC to staff the help desk. Thompson Depo., p. 8-9, 19. The five DRC help desk employees are white males. Hinton Depo., Ex. G; Guess Depo., p. 136, 146, 168. Although this shared project required agency collaboration, Defendants maintained separate supervisory staff, human resources departments, and management policies and procedures. Guess Depo., p. 66-68; Hinton Depo., p. 57-58, 101. Accordingly, Plaintiffs were subject to DYS policies and procedures. *Id.* Hinton Depo., p. 57-58, 101; Guess Depo, p. 66-68, 85-86. Likewise, the DRC employees were subject to DRC policies and procedures. Hinton Depo., p. 53-58, 95-98, 100-101; Guess Depo., p. 85-86.

{¶6} Prior to being assigned to the help desk, Guess traveled between the institutions, Central Office, and the regional offices to work on computers. Guess Depo., p. 42. In 2016, DYS investigated and disciplined Guess due to her sick leave balance. Guess Depo., p. 14. Because Guess was aware that a male coworker had a similar sick leave balance and was not investigated or disciplined, she filed a complaint with the Ohio Civil Rights Commission (OCRC) on February 22, 2017. Complaint, ¶ 14-15; Guess Depo., p. 54-58. Ultimately, the written discipline was removed from Guess' personnel file as the result of an agreement. *Id.* at 60. Thereafter, on February 27, 2017, DYS gave "Guess a written coaching for 'attendance and dependability' issues." Complaint, ¶ 16.

{¶7} In July 2018, Guess was assigned to the help desk. Guess Depo., p. 47. On January 17, 2019, Linda Diroll, DRC's IT Delivery Service Chief who served as the help

desk manager, issued Guess a written coaching[1] for working 0.10 hours overtime without prior authorization. *Id.* at 86-89; Hinton Depo., p. 44; Defendants' Motion for Summary Judgment, p. 4. While Guess acknowledges she knew that working unauthorized overtime is a violation of DYS policy, she was not aware at the time that she had worked over forty hours in the week. *Id.* at 87-88. According to Guess, other white, male help desk staff—specifically, Steve, Tim, and Jimmy—told her that they had worked overtime before and were not disciplined for it. *Id.* at 90-92. However, Guess acknowledged that she is not familiar with DRC's policies or employee handbook. *Id.* at 68. Additionally, Guess was aware of other DYS employees, who were not staffed at the help desk, who had worked overtime before and were not disciplined for it. *Id.* at 90-92. However, Guess acknowledged that she neither knew whether they had prior authorization for working overtime nor who was involved in these employees' supervision as it related to timekeeping or discipline. *Id.* at 91-92. Guess filed a grievance regarding the written counseling, but it was not heard. *Id.* at 97.

{¶8} In January 2019, Guess received a traffic violation for operating a vehicle under the influence (OVI). *Id.* at 101. In February 2019, Guess took leave on two occasions to attend court dates associated with the OVI. *Id.* at 100-101, 119-120. While she requested the days off in advance and used leave to do so, she did not provide a reason for taking the time off. *Id.* at 100-101.

{¶9} Thereafter, Guess approached Diroll about needing future time off every Tuesday for a court-related matter. *Id.* at 97-99. Diroll refused to allow Guess time off without a court order. *Id.* at 97-98. Guess attempted to obtain a court order, but she was unable to do so. *Id.* at 99. Although it was not a court order, Guess showed Diroll alternative documentation to demonstrate that she was in court. *Id.* at 97-98. When Diroll continued to deny her time off, Guess went to her DYS supervisors to whom she

---

[1] While Guess acknowledges that a written coaching is not formal discipline, she contends "it puts you on the discipline grid" and subsequent issues would result in formal discipline. Guess Depo., p. 80.

explained why she needed to take future leave. *Id.* at 105-108. Scott Welsh, DYS Network Supervisor, approved Guess' request for future use of leave subject to stipulations regarding the timeframe in which Guess could have the leave, which was written on a coaching form. *Id.*

{¶10} Shortly after that, Guess was informed that she was being investigated for reasons related to her OVI. *Id.* at 108-111. On March 19, 2019, Guess was provided formal notice that she needed to attend a pre-disciplinary meeting for failing to receive a manager's approval for using leave to defend a court action. *Id.* at 115-120, Ex. O. While Guess does not dispute that the policy exists and that she violated it, she contends that she was not aware at the time that a policy required her to disclose why she was using her personal leave. *Id.* at 119-120. However, Guess recognizes that she signed off on having reviewed DYS' policies. *Id.* at 120. Additionally, while Guess acknowledges she was adequately represented during the investigation, she believes Diroll initiated the investigation due to racial bias against her. *Id.* at 124-126.

{¶11} Prior to being assigned at the help desk, Hinton performed bargaining-unit work at various DYS locations. Hinton Depo., p. 43-45. On October 1, 2018, Hinton began his assigned duties at the help desk. *Id.* at 42. On October 18, 2018, Harvey Reed, DYS Director, sent an email to DYS IT employees explaining that employees were "required to punch in and/or out when leaving the building." *Id.* at 78-79, Ex. D. On December 6, 2018, after returning from a lunch break, Hinton attempted to clock back in using his work badge; however, Kronos, DYS' time-keeping system, would not accept his badge. *Id.* at 64-65. Hinton manually went into Kronos and entered his time using the time editor feature. *Id.* at 66-67, 98. In February 2019, Hinton learned that there was an investigation relating to his unauthorized manual entry of time. *Id.* at 70-74. Thereafter, Hinton received formal notice of a pre-disciplinary hearing that was later cancelled. *Id.* at 213. Hinton contends that his white, male help desk coworkers—specifically, Chris, Steve, and Tim—have manually entered their time and were not investigated. *Id.* at 94-

99.  However, Hinton acknowledges that he is not familiar with DRC policies with respect to time keeping, breaks, or taking leave.  *Id.* at 58.

{¶12} In January 2019, Jeff Cavendish, a DRC Infrastructure Specialist 3 who also managed the help desk, received complaints from DRC help desk employees about Plaintiffs' workplace conduct.  Cavendish Depo., p. 15-16, 36.  Cavendish consulted Diroll concerning the complaints and she advised him to hold a meeting with the help desk employees about how to formally document grievances.  *Id.*  On February 26, 2019, Cavendish held a meeting with Chris, Noral, Braeden, Steven, Jimmy, and Tim (the meeting).  Cavendish Depo., p. 31-33; Guess Depo., p. 133; Hinton Depo., p. 167-169.  During the meeting, Cavendish informed those in attendance that if they had workplace complaints that they felt warranted further investigation, then they would need to complete an incident report.  Cavendish Depo., p.  34.

{¶13} When Cavendish initiated the meeting, he called the help desk employees he saw present at their desks into the computer lab.  *Id.* at 31-34.  At the time, Thompson was not at her desk.  Cavendish Depo., p. 31-33; Guess Depo., p. 134; Hinton Depo., p. 168.  While Cavendish states he did not see Plaintiffs sitting at their desk at the time he announced the meeting, Plaintiffs contend they were at their desks and witnessed Cavendish gather Chris, Braeden, Steven, Noral, Jimmy, and Tim for the meeting.  Cavendish Depo., p. 32-33; Guess Depo., p. 133; Hinton Depo., p. 167-169.  While Cavendish felt it was important that as many of the help desk employees were present, the meeting was impromptu in nature because he had other meetings to attend that day.  Cavendish Depo., p. 31-34, 36-37.  Cavendish did not hold a subsequent meeting with Plaintiffs or Thompson.  *Id.* at 36.

{¶14} According to Guess, Cavendish had only held one prior meeting when he became supervisor, which included all the help desk employees.  Guess Depo., p. 134.  Plaintiffs do not have any personal knowledge of what prompted or occurred during the February 26, 2019 meeting.  Guess Depo., p. 139, Hinton Depo., p. 173-175.  At the time

of the meeting, Plaintiffs assumed it pertained to DRC matters because the meeting involved only DRC employees.  Guess Depo., p. 133; Hinton Depo., p. 168-169.  After the meeting, McCoy informed Thompson, who returned to her desk moments before the meeting concluded, that Cavendish instructed help desk employees to complete an incident report any time there was an issue with Guess or Hinton.  Thompson Depo., p. 25-26.  Thompson did not perceive that she was excluded from the meeting because she was an ethnic minority; however, she believes that the meeting created a "war" where the help desk employees "went back and forth filing reports on each other."  *Id.* at 27-30.

{¶15} According to Guess, Thompson relayed to her the information that McCoy told Thompson about the meeting.  Guess Depo., p. 137-138.  Guess then informed Hinton of the same.  *Id.* at 138.  According to Plaintiffs, Wayne Patrick "Pat" Morgan, a DYS Labor Relations Officer, thereafter informed them that the other help desk employees had made statements against them and instructed them to make a written statement. Hinton Depo., p. 189-190; Guess Depo., p. 144-145; Morgan Depo., p. 8, 11.  Thereafter, Plaintiffs submitted written statements.  Hinton Depo., p. 187-190, Ex. G.; Guess Depo., p. 143-144, 154, Ex. G.  Guess submitted one statement which alleged that the meeting created a hostile work environment because "all white males" were instructed to report incidents about her and Hinton, the only two black help desk employees, and the only additional minority coworker, Thompson, was also excluded.  *Id.* Hinton submitted three statements which alleged that offensive discussions—such as discussing the topics of "gun control, homophobia, abortion, lynching, and the use of profanity"—disrupted the workplace, the February 26, 2019 meeting created a hostile work environment, and that Diroll and Cavendish allowed the DRC help desk employees get away with theft of time.  *Id.*

{¶16} On March 20, 2019, Guess informed Hinton that she was going to contact the Employee Assistance Program (EAP).  Guess Depo., p. 145-146.  Guess explained to EAP that she was feeling discriminated against, she was afraid she was going to be

fired for issues related to her unauthorized overtime and use of leave, and she could not handle the workplace environment anymore. *Id.* Thereafter, Hinton contacted EAP and explained that he was regularly being investigated and harassed by his employer and he was under constant stress trying to get someone to listen to what is going on in the work environment. Hinton Depo., p. 23-25. Plaintiffs left work that same day following their discussion with EAP and have not returned. Hinton Depo., p. 23-25, 215; Guess Depo., p. 117, 145-146. Guess was involuntarily separated from employment due to disability on September 1, 2019. Guess Depo., p. 38. Hinton was involuntarily separated from employment due to disability on October 13, 2019. Hinton Depo., p. 16-17. Plaintiffs have not requested reinstatement. Guess Depo., p. 15; Hinton Depo., p. 17.

**Discussion**

{¶17} Plaintiffs allege that, since being tasked to staff the help desk, Defendants have subjected them to unwarranted discipline to which their white coworkers were not subjected. Plaintiffs further assert that the February 26, 2019 meeting constituted racial harassment thereby creating a hostile work environment. Additionally, Plaintiff Guess contends that DYS retaliated against her when it issued her a written coaching soon after she filed a complaint with OCRC in 2017. As a result, Plaintiffs bring claims for employment discrimination based on race, hostile work environment, and retaliation in violation of R.C. 4112. In its motion, Defendants argue that they are entitled to judgment as a matter of law on Plaintiffs' disparate treatment and hostile work environment claims because Plaintiffs cannot establish their prima facie case for either claim. Additionally, Defendants argue that Guess' retaliation claim against DYS is time-barred.

*Racial Discrimination*

{¶18} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race * * * [or] national origin

* * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any other matter directly or indirectly related to employment." It is well-established that "discrimination actions under federal and state law each require the same analysis." *See Ray v. Ohio Dept. of Health*, 2018-Ohio-2163, 114 N.E.3d 297, ¶ 22 (10th Dist.), citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981); *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164 (1991). Accordingly, "Ohio courts may look to both federal and state courts' statutory interpretations of both federal and state statutes when determining the rights of litigants under state discrimination laws." *Id.* To prevail, Plaintiffs must "present[] evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996), paragraph one of the syllabus; *see also Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348-349 (6th Cir.1997) ("The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both. If a plaintiff can produce direct evidence of discrimination then the *McDonnell Douglas-Burdine* paradigm is of no consequence. Similarly, if a plaintiff attempts to prove its case using the *McDonnell Douglas-Burdine* paradigm, then the party is not required to introduce direct evidence of discrimination."). Plaintiffs do not present any direct evidence of discriminatory intent. *See Smith v. Superior Prod., LLC*, 2014-Ohio-1961, 13 N.E.3d 664, ¶ 16 (10th Dist.) ("Direct evidence of discrimination is evidence of any nature, which if believed, is sufficient by itself to show the employer more likely than not was motivated by discriminatory animus in its action.")

{¶19} Absent direct evidence, Plaintiffs bear the initial burden of establishing a prima facie case of racial discrimination. *Hall v. Ohio State Univ. College of Med.,* 10th Dist. Franklin No. 11AP-1068, 2012-Ohio-5036, ¶ 13-14. Under the disparate treatment theory, Plaintiffs must show that "(1) he or she is a member of a protected class; (2) he

or she suffered an adverse employment action; (3) he or she was qualified for the position in question; and (4) the employer treated a non-protected, similarly-situated person more favorably." *Id.* at ¶ 13-15. Defendants argue that Plaintiffs cannot establish that Defendants treated a non-protected, similarly-situated person more favorably. The Court agrees.

{¶20} To show that a coworker is "similarly-situated", "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Brehm v. Macintosh Co.,* 10th Dist. Franklin No. 19AP-19, 2019-Ohio-5322, ¶ 39 (citations omitted). Plaintiffs allege experiencing disparate treatment for separate issues each had related to their timekeeping and for being excluded from the February 26, 2019 meeting.

{¶21} Hinton admits that he manually entered his time using Kronos' time editor feature without prior authorization. Hinton seeks to compare himself to that of several other help desk employees, specifically the white, male DRC employees. Assuming it is true that these coworkers manually entered their time without facing discipline, there is no evidence that they did so using the time editor feature or without prior authorization. Furthermore, these coworkers are all DRC employees and Hinton acknowledges that DRC has separate disciplinary procedures of which he is unfamiliar.

{¶22} Additionally, Guess admits to having worked overtime without prior authorization. Initially, Guess seeks to compare her behavior to that of several other help desk employees, specifically the white, male DRC employees. Assuming it is true that these coworkers had worked overtime without facing discipline, there is no evidence that they did so without prior authorization. Moreover, as already stated, these coworkers are all DRC employees, and Guess also acknowledges that DRC has separate disciplinary procedures of which she is unfamiliar.

{¶23} Next, Guess seeks to compare herself to other DYS employees. However, there is no evidence regarding the specific circumstances under which these DYS employees were able to work overtime. Also, Guess acknowledges that these employees do not deal with the same supervisor as her. Moreover, in addition to being similarly-situated, these DYS employees must be non-protected individuals and the record is void of any evidence regarding their status as protected or non-protected individuals.

{¶24} Regarding Guess' unauthorized use of leave for a court-related matter, she has not purported that a non-protected, similarly-situated person engaged in the same conduct and was treated more favorably.

{¶25} Additionally, Plaintiffs contend that, because of their race, they were excluded from the February 26, 2019 meeting held with all of the white, male help desk employees. However, all the individuals who attended the meeting were DRC employees, while Plaintiffs are DYS employees. At the time the meeting took place, Plaintiffs assumed they were not included in the meeting because they were DYS employees. Additionally, Plaintiffs acknowledge that DRC and DYS employees have different supervisors and are governed by separate policies and procedures.

{¶26} Assuming arguendo that Plaintiffs could establish their prima facie cases, they have failed to show how Defendants' legitimate explanation for its conduct is pretext for discrimination. *See Hall* at ¶ 15 ("Once a plaintiff demonstrates a prima facie case, the employer is required to set forth some legitimate, non-discriminatory basis for its action. If the employer meets its burden, a plaintiff must be afforded an opportunity to prove by a preponderance of the evidence that the legitimate reasons the employer offered were not its true reasons for its actions but were a pretext for discrimination. The ultimate burden of persuasion always remains with the plaintiff."). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400, fn.4 (6th Cir.2009). A reason cannot be proved to be a pretext for

discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993).

{¶27} Defendants investigated and initiated disciplinary measures against Plaintiffs because they each violated DYS policies related to their respective conduct. Both Hinton and Guess acknowledge that they engaged in the conduct for which they were investigated. Moreover, neither Hinton nor Guess dispute that they violated a work rule.

{¶28} Additionally, Defendants conducted the February 26, 2019 meeting to instruct help desk employees on how to formally report complaints, which was held in response to Cavendish having received various informal complaints. While Cavendish recognizes that those informal complaints were about Plaintiffs, Plaintiffs point to no evidence that those informal complaints were based on race. Moreover, Plaintiffs provide insufficient evidence to reasonably conclude that they were excluded from the meeting because of their race. As stated above, all the employees who attended the meeting were DRC employees. At the time the meeting took place, Plaintiffs assumed they were not included in the meeting because they were not employed by DRC, not because of race.

{¶29} Moreover, Plaintiffs have no personal knowledge of what went on during the meeting. Plaintiffs did not form their opinion that the meeting was motivated by racial discrimination until after the fact. However, Plaintiffs' only knowledge of the meeting comes through layers of hearsay, which show, at most, that the meeting concerned complaints about Plaintiffs' workplace conduct. Plaintiffs conclude that the meeting was racially motivated solely because only white males were in attendance. These conclusory opinions are an insufficient basis on which the Court can find that Defendants' legitimate explanation is pretext for racial discrimination. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir.1992).

{¶30} Although Plaintiffs bring their claims together in attempt to show a pattern of discrimination, they provide insufficient evidence from which the Court could reasonably

doubt Defendants' legitimate reasons for either initiating disciplinary measures or conducting the meeting.  In short, Plaintiffs do not meet their burden to demonstrate that there is a genuine dispute of material fact.  Therefore, Defendants are entitled to judgment as a matter of law on Plaintiffs' racial discrimination claim.

*Hostile Work Environment*

{¶31} To prevail on a claim for "hostile work environment created by racial harassment, the plaintiff must establish: (1) the employee was a member of the protected class; (2) the harassment of the employee was unwelcome; (3) the harassment complained of was based on race; (4) the harassment had the effect or purpose of unreasonably interfering with the employee's work performance or of creating an intimidating, hostile, or offensive work environment; and (5) respondent superior (employer) liability."  *Chapa v. Genpak, LLC*, 10th Dist. Franklin No. 12AP-466, 2015-Ohio 897, ¶ 33.  Plaintiffs contend that Defendants promoted a hostile work environment created by allowing inappropriate discussions and language in the workplace and facilitating racially-exclusive meetings and disparate discipline of minority employees, which amounted to racial harassment.  Defendants argue that Plaintiffs cannot show that the harassment of which they complain was based on race or that any alleged harassment was severe enough to create a hostile work environment.  The Court agrees.

{¶32} When determining whether the harassment created an intimidating, hostile or offensive work environment, a court must consider the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether its physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work."  *Chapa* at ¶ 34.  The purpose of these standards is to "filter out complaints which attack 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  *Id.* at ¶ 35.

{¶33} Hinton complains of workplace discussions about "gun control, homophobia, abortion, lynching, and the use of profanity." Initially, the Court notes that Plaintiffs' only evidence that these discussions amount to racial harassment is because they were made by their white coworkers. Even assuming these discussions did occur as alleged, this is insufficient evidence to conclude that they were based on race. Moreover, based on the evidence presented, the Court concludes that such discussions are no more than the ordinary tribulations of the workplace and are not severe enough to constitute harassment. Any comments that could arguably amount to harassment did not happen with any notable frequency, pose any physically threat or humiliation to Plaintiffs, and did not unreasonably interfere with Plaintiffs' work.

{¶34} Additionally, Plaintiffs contend that the February 26, 2019 meeting created a hostile work environment. While it appears that this meeting may have caused some disruption to the workplace environment, it was minor in nature. For instance, employees going back and forth making complaints about one another is not a severe enough disturbance to constitute harassment. Furthermore, although it is not disputed that this meeting had only the white, male employees in attendance, this scenario only occurred one time. Indeed, this was the second of two meetings that Cavendish held with help desk employees and Plaintiffs were included in the first.

{¶35} Moreover, the Court again notes that Plaintiffs' evidence that this meeting was based on race is that only white males were in attendance. However, Plaintiffs did not initially take offense to being excluded from the meeting—or believe such exclusion was based on race—at the time it occurred, as they assumed it was because they were from a separate agency than Cavendish and all those who attended the meeting. Even viewing the facts in a light most favorable to Plaintiffs, the Court finds that the circumstances were not severe enough to constitute harassment and there is insufficient evidence to conclude any alleged conduct was based on race. Therefore, there are no

genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Plaintiffs' hostile work environment claim.

*Retaliation*

**{¶36}** Plaintiff Guess brings a claim of retaliation as the result of DYS issuing her a written coaching on February 27, 2017, shortly after she filed a discrimination complaint with the OCRC. Generally, "civil actions against the state * * * shall be commenced no later than two years after the date of the accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties." R.C. 2743.16(A). Discrimination claims against the state under R.C. 4112 are subject to the two-year statute of limitations period set forth in R.C. 2743.16(A). *Hostacky v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 21AP-349, 2021-Ohio-4464. In the absence of a factual dispute as to when a plaintiff's cause of action accrues, the application of the statute of limitations is a question of law. *Bell v. Ohio State Bd. of Trustees*, 10th Dist. Franklin No. 06AP-1174, 2007-Ohio-2790, ¶ 21. Plaintiffs brought this action on February 4, 2021, more than two years after the alleged retaliatory conduct occurred. Consequently, the Court finds that Plaintiff Guess' claim is time-barred, and Defendants are entitled to judgment as a matter of law.

**Conclusion**

**{¶37}** Based upon the foregoing, the Court finds that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law.

PATRICK E. SHEERAN
Judge

[Cite as *Hinton v. Ohio Dept. of Youth Servs.*, 2022-Ohio-1598.]

| ROGER HINTON, et al. | Case No. 2021-00063JD |
|---|---|
| Plaintiffs | Judge Patrick E. Sheeran<br>Magistrate Gary Peterson |
| v. | |
| OHIO DEPARTMENT OF YOUTH<br>SERVICES, et al. | <u>JUDGMENT ENTRY</u> |
| Defendants | |

{¶38} A non-oral hearing was conducted in this case upon Defendants' motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, Defendants' motion for summary judgment is GRANTED and judgment is rendered in favor of Defendants. All previously scheduled events are VACATED. Court costs are assessed against Plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK E. SHEERAN
Judge

**Filed March 28, 2022**
**Sent to S.C. Reporter 5/12/22**